IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GREG WILLIAMS,

        Plaintiff,

  v.

CITY OF OAKLAND, et al.,

        Defendants.

_____/

No. C-06-00303  EDL

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendant's Motion for Summary Judgment came on for hearing on January 15, 2008. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS Defendant's motion for the following reasons and for the reasons stated at the hearing.

## I.  BACKGROUND

Plaintiff Greg Williams ("Plaintiff") sued that Defendants City of Oakland, Deputy Chief Ronald Carter, and Does 1-100 (collectively "Defendants") for demoting him as retaliation for engaging in protected activity in violation of his First, Fourth, and Fourteenth Amendment rights. Defendants moved to dismiss Plaintiff's complaint. Plaintiff conceded that he had no Fourth amendment claim, and the Court granted Defendants' motion to dismiss with leave to amend. See Aug 23, 2006 Order. Plaintiff amended his complaint, and Defendants again moved to dismiss. On November 28, 2006, the Court granted in part and denied in part Defendants' Motion to Dismiss. Plaintiff withdrew his substantive due process claim, the Court dismissed the equal protection claim with leave to amend, and the Court denied the motion with respect to the remaining claims. See Dec. 20, 2006 Order. Plaintiff filed a second amended complaint ("SAC") on December 8, 2006, which is the operative complaint.

In his SAC, Plaintiff alleges that he was a firefighter with Oakland, was promoted to lieutenant, and then promoted to the rank of captain in April 2003. In October 2003, he was written up for subordination and then demoted to lieutenant after he engaged in protected activity, namely exercising his free expression in criticizing the Oakland fire department ("OFD"). SAC ¶¶ 23-24. He alleges claims under 42 U.S.C. § 1983 for violations of his First and Fourteenth Amendment rights, contending that his procedural rights to due process and right to equal protection were violated, and that he was retaliated against for exercising his constitutional rights.

Specifically, the facts, in the light most favorable to plaintiff, are as follows. On July 18, 2003, Chief Simon promoted Plaintiff to a permanent captain's position, subject to a six month probationary period. Deputy Chief Carter prepared the document reflecting the promotion. Def. Ex. C ¶ 9; Def. Ex. D ¶¶ 6-8. According to Plaintiff, however, he served as a captain from April 7, 2003 until January 17, 2004, and therefore completed his six-month probationary period on October 7, 2003. Ex. Nos. 8 & 10 to Carter Depo. Plaintiff's initial appointment in April was a limited duration appointment ("LDA") to captain. Def. Ex. C (Farrell Decl.) ¶ 9; Def. Ex. A(1) (Pl. Depo.) at 37; Def. Ex. D (Carter Decl.) ¶¶ 4-5 & Ex. D(1). OFD management testified that time as an LDA captain does not count toward the six month probationary period required once one is promoted to a permanent position.[1] Supp. Def. Exs. A(1) (Wittmer Depo.) at 20; A(3) (Farrell Depo.) at 14-15; A(4) (Carter Depo.) at 18.

Plaintiff, however, believed that he was a fully vested captain when he was "demoted," based on his understanding that his LDA time counted towards his probationary period. Def. Ex. A(1) at 204-205. In support of his belief, Plaintiff relies on the Memorandum of Understanding ("MOU"), which states that the "probationary period of a bargaining unit member filling a position from a promotional examination shall be for a period of six months of active service performing the full

---

[1]    Plaintiff relies on Towner's deposition for the proposition that time served as an LDA counts towards one's time as a probationary appointee. Towner, however, stated that whether time as an LDA counts toward a probationary period depends on several factors, including whether the LDA appointment was done "consistently," but that he was "not really sure" about those factors and, most significantly, that he did not make those types of personnel decisions. Towner Depo. at 21:25-22:6. He later explained that LDA time is not counted toward time in a regular appointment, and that the six month probationary period begins from the time that an individual begins at the permanent promotion. Towner Depo. at 105-106. This testimony is not sufficient to create a disputed issue of fact.

2

duties of the promoted rank." Williams Decl., Ex. 2. It further notes that "[i]n the case of an individual bargaining unit member requiring further consideration, as evidenced by a performance evaluation with a below standard rating in at least one sub-section, the City at its option, may extend the probationary period up to three months." Id.

In July 2003, in response to vehicle accidents, Chief Simon issued a communication declaring that "as of now, backing incidents are unacceptable in the Oakland Fire Department" and that "accidents resulting in any damage to apparatus, property, or injury to any persons shall be reported immediately to FDC. There are no exceptions to this rule!" Def. Ex. A(2) (July 10, 2003 Communication) (emphasis in original).

On October 9, 2003, an OFD vehicle driven by a firefighter under Plaintiff's command, Lee Katsanos, was involved in a backing accident which caused damage to the vehicle. Plaintiff did not log the incident. He submitted his report three shifts after the accident occurred and only after being reminded to do so by a Battalion Chief. His report was incomplete, because Plaintiff still needed Katsanos' report. Ex. A(1) at 151-158, A(3). Plaintiff states that he reported the incident over the phone to the engineer at the firehouse the morning after he left. Def. Ex. A(1) at 147-48. Plaintiff ascribes his failure to report the incident on the same day that it happened to personal problems at home. Def. Ex. A(1) at 147-48. Plaintiff also maintains that he called Katsanos repeatedly during the period of October 10-12, 2003 in order to track down his part of the report. Williams Decl. ¶ 2; Def. Ex. A(1) at 154-156. Katsanos faxed his report in on October 12, and does not recall if he received calls from Williams. Def. Ex. A(3); Katsanos Depo. at 9.

After an investigation into the incident, Battalion Chief Towner issued a letter of reprimand to Plaintiff and informed Plaintiff of his right to file a grievance. Plaintiff did not deny the facts in the document or file a grievance. Def. Ex. A(3); B (Towner Decl.) at ¶ 8. Katsanos did not recall speaking with Towner about the investigation or the cracked lens incident. Katsanos Depo. at 20-21. Towner discussed the incident with Farrell. Towner Depo. at 113-114.

Plaintiff's performance from July 18, 2003 to November 30, 2003 was the subject of a November 30, 2003 evaluation. Def. Ex. A(4), A(3), A(1) at 174-75. Plaintiff's performance was rated "improvement needed" overall and specifically with respect to reporting sick, failure for

Plaintiff and his crew to get into proper uniform prior to roll call, failure to complete the above vehicle report, and failure to complete one-on-one interviews which he was required to do. He was also told that his performance was deficient for his failure to complete California Fire Incident Reports ("CFIRs"). Id. Vehicle reports and fire reports were the subject of heightened departmental concern which predated July 2003. Def. Ex. C ¶¶ 3-5. Deputy Chief Farrell reviewed and signed the evaluation. Def. Ex. C ¶ 8.

On December 31, 2003, Plaintiff was released from his captain position and returned to his position as lieutenant, effective January 17, 2004. Def. Ex. A(7). Chief Simon made the decision to first promote, then release Plaintiff from probation. Def. Ex. D ¶ 12. The decision was made after several meetings between Simon and his two deputy chiefs, Carter and Farrell, and upon Farrell's November 7, 2003 recommendation. Carter Depo. at 25-26; Farrell Depo. at 35, 51-53, 64-65; Def. Ex. C(1).

Farrell's recommendation was based on a number of factors. According to Farrell, Battalion Chief Wittmer was a source of information about Williams' inadequate performance (regarding getting the crew into uniform before roll call), but Wittmer says he never discussed Plaintiff's performance with Farrell as of November 7, 2003 and cannot recall ever discussing Plaintiff's performance with Farrell. Farrell Depo. at 56; Wittmer Depo. at 38-39. While Wittmer cannot recall confronting Plaintiff about Plaintiff's refusal to require a female firefighter to dress in the men's locker room, he does recall Plaintiff and his crew not always being dressed in a timely manner. Wittmer Depo. at 22-24, 32. Farrell also cited a complaint by Plaintiff's girlfriend, who never provided a written complaint as requested by Farrell. Farrell Depo. at 40-41.

Farell's recommendation was also based on the reprimand by Towner regarding the cracked lens incident and Williams' failure to complete the report in a timely manner. Def. Ex. A(3). Towner's reprimand is dated incorrectly (September 21, 2003), and is the only reprimand Plaintiff received from Towner. Towner Depo. at 50; Pl. Ex. 6. Towner's reprimand states that the report is incomplete, noting that the operator driver license number, expiration date, injury information, and vehicle license number were omitted, and stating that "[t]he driver's section had not been completed or signed. . . No general report was submitted or received concerning your actions in this incident

4

even after you directed [sic] to do so on the meeting on October 13th, 2003." Def. Ex. A(3). Plaintiff's incomplete report was submitted multiple shifts (approximately 12 days) after the accident. Def. Ex. A(1) at 158-59; A(3).

Plaintiff maintains that during his tenure with OFD, he was a vocal critic of departmental policy. One incident of such criticism involved his refusal to discipline a female firefighter not in uniform because she shared locker space with male firefighters and could not get into uniform in a timely fashion without changing in front of them. Def. Ex. A(1) at 58-71. This occurred some time in October or November of 2003. Battalion Chief Wittmer told Plaintiff to discipline the female firefighter without knowing or asking for her reasons not being in uniform. Later that day, Plaintiff told Wittmer the firefighter's reasons and stated that he thought she should not have to change in the men's locker room. Wittmer gave Plaintiff no further comments or instructions, nor did he press Plaintiff to discipline the female firefighter after that. Def. Ex. A(1) at 62-63. Plaintiff was not disciplined for his failure to discipline that firefighter. Def. Ex. A(1) at 71. As a probationary captain, he was responsible for discipline of his subordinate officers. Def. Ex. A(1) at 63-64, A(5).

Plaintiff also contends that he made statements to various OFD command officers, including criticizing the administration for having locks changed while men were on duty. Def. A(1) at 81, 87. Plaintiff made the statement to Captain DeLacey, but does not know if DeLacey told anyone about the remark. Id. at 82-83. Plaintiff further notes that he protested a controversial fireboat shutdown after he became captain. Farrell Depo. at 29 (there was controversy about fireboat shutdown); Towner Depo. at 52-53 (shutdown was political); Williams Decl. ¶ 3 (vocal critic); Brumfield Decl. ¶ 2 (Williams was vocal critic of actions by Department's administration while captain and was vocal in opposition to closure of Station 2 and removal of the fireboat from service); A(1) at 72. Employees at Station 2 protested because they thought the fireboat was important to ensure quick rescue response. Katsanos Depo. at 24-27 (also noting that flyers were distributed to general public). According to Plaintiff's declaration, he was also "vocal at times and argued with then-Deputy Chief Farrell about sexual harassment issues in the Department." Williams Decl. ¶ 3. However, at his deposition he stated that he could not recall whether his encounters with Farrell occurred while he was a captain. He also recalled making outspoken remarks during a sexual

harassment training, but could not recall if Farrell was present at that particular class. Def. Ex. A(1) at 186.

Neither Battalion Chief Towner, who wrote the letter of reprimand, nor deputy Chief Farrell, who signed off on the negative evaluation and recommended plaintiff's release, nor Deputy Chief Carter, who drafted the release from probation letter, were aware of any statements by Plaintiff critical of OFD. Def. Exs. B ¶ 9 (Towner did not know plaintiff other than an occasional incident which he may have responded to); C ¶ 10 (Farrell states "I was unaware of any instances when plaintiff had spoken up in criticism of the department or its management . . . I have had casual discussion with plaintiff but we have never had any heated discussions or arguments, or any conversations that stand out as notable or disagreeable"); D ¶ 13 (Carter had no awareness of incidents when Plaintiff was critical of him or the department). Plaintiff states that he notified a Battalion Chief that he thought Carter made insulting comments, but he does not allege he told Carter this directly. Def. Ex. A(1) at 76-77.

Plaintiff maintains that other OFD personnel were not disciplined for conduct he views as more severe than his own. Def. Ex. A(6) (SAC) at 4. Specifically, Plaintiff notes that a lieutenant who brandished a pocket knife on a fellow firefighter was later promoted to captain and was not demoted. Farrell Depo. at 73. None of these employees were on probation, however. Def. Ex. D (Carter Decl.) ¶ 14.

## II.     ANALYSIS

### A.     Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. "To show the existence of a 'genuine' issue, . . . [a plaintiff] must produce at least some significant probative evidence tending to support the complaint." Smolen v. Deloitte, Haskins &

Sells, 921 F.2d 959, 963 (9th Cir. 1990) (quotations omitted). The court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

**B.      First Amendment**

In order to prove that Defendants violated his rights under the First Amendment, Plaintiff must show: (1) that he engaged in protected speech; (2) that he suffered an adverse employment action as a consequence of engaging in protected speech; and (3) that his exercise of protected speech was a substantial motivating factor in the adverse employment action. See Thomas v. Douglas, 877 F.2d 1428, 1431 (9th Cir. 1989). To show that speech is a substantial motivating factor, the plaintiff, in addition to producing evidence that his employer knew of his speech, must produce evidence of at least one of the following three types. Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 744 (9th Cir. 2001) (citations omitted). The first type of evidence shows that "proximity in time between the protected action and the allegedly retaliatory employment decision" such that a "jury logically could infer [that the plaintiff] was terminated in retaliation for

his speech."[2]  The second type is "evidence that his employer expressed opposition to his speech, either to him or to others."  The third type is evidence that his employer's proffered explanations for the adverse employment action were false and pretextual."  Id..

As a public employee, Plaintiff's claims are further restrained, because he must demonstrate that he was speaking as a citizen, rather than pursuant to his official duties.  See Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951, 1959 (2006) ("[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance'").  In Garcetti, the Supreme Court held that the controlling factor was whether the expression was made pursuant to the speaker's duties as a public employee.  Id. at 1960.  Thus, there must be a triable issue of fact as to whether the statements by Plaintiff were made  "pursuant to his official duties" for his First Amendment claim to survive.  See also Marable v. Nitchman, No. 06-35940, 2007 U.S. App. LEXIS 29741 (9th Cir. 2007); McGee v. Public Water Supply Dist. # 2, 471 F.3d 918, 921 (8th Cir. 2006) ("McGee complained that the septic tank was not properly repaired, he threatened to bulldoze over the site himself, and he insisted the water pipe relocation project required additional asbestos testing.  This was an exercise of McGee's official duties.").  In Marable, the Court concluded that the plaintiff had no official duty to ensure that his supervisors were refraining from allegedly corrupt practices, and his complaints as to these corrupt schemes were not exempt from First Amendment protection.  In so concluding, the Ninth Circuit noted that the relevant inquiry focuses on whether the speech was  required as a part of an individual's official duties and is part of the work that individual is paid to perform.  Id. at *21-22 (in finding that the plaintiff's speech was not pursuant to his official duties, noting that it could not " be disputed that [plaintiff's] job was to do the tasks of a Chief Engineer on his ferry, and such tasks did not include pointing to corrupt actions of higher level officials whom he purportedly thought were abusing the public trust and converting public funds to their own use by overpayment schemes.").

In addition, "[w]hen employee expression cannot be fairly considered as relating to any

---

[2]  However, "timing alone will not show causation in all cases; rather, in order to support an inference of retaliatory motive, the termination must have occurred fairly soon after the employee's protected expression."  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002) (internal quotations omitted).

8

matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." Connick v. Myers, 461 U.S. 138, 146 (1983). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Id. Whether an employee's speech addresses a matter of public concern must be determined by the context, content, and form of the given statement. Id. at 147.

Finally, even if a plaintiff can show that his speech was something other than related to his job responsibilities, defendants are not liable if they can demonstrate that they would have taken the same action anywhere, regardless of the protected speech. Mt. Healthy City Sch. Dist. and Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977). The government must show this defense by clear and convincing evidence. Rivera v. United States, 924 F.2d 948, 954 n.7 (9th Cir. 1991).

Here, any speech by Plaintiff that preceded his promotion could not be a motivating factor; Plaintiff was promoted despite such speech. In addition, Plaintiff submitted extremely thin and vague evidence that the decision makers on his subsequent demotion knew of these vague statements. See Def. Ex. A(1) at 81-85, 97-98 (cannot remember specific person above rank who he discussed days off issues with, and cannot remember chiefs within hearing shot); id. at 84 (Plaintiff made certain comments about Chief Williams to a sizable part of the department); id. at 76-77 (Plaintiff complained about Carter's comments, which Plaintiff did not hear firsthand, regarding repercussions for sabotaging the fireboat or station to an unknown battalion chief on an unknown date); id. at 186-87 (Plaintiff spoke up during sexual harassment training, but was not sure if he spoke up in "that particular class" that Farrell attended).

Plaintiff could recall only one specific statement that he made while he was a probationary captain: his comment to Wittmer about not disciplining the female firefighter who was not dressed for roll call. Plaintiff, however, testified that it was his responsibility to maintain order and function of the crew, which is substantiated by the job description's statement that captains shall be

responsible for the discipline and efficiency of all units under their command. Id. at A(5). Clearly, the decision of whether or not to discipline the subordinates in his unit was part of Plaintiff's job responsibilities as a captain. Plaintiff reported to Wittmer in his capacity as a supervisor when he told him that he was uncomfortable giving the firefighter an order to dress in the men's locker room. Def. Ex. A(1) at 63-64. Considering the practical inquiry of what duties Plaintiff was expected to perform, these comments about Plaintiff's decision not to discipline a firefighter in his unit were made pursuant to Plaintiff's official duties, and therefore are not entitled to First Amendment protection.[3]

In addition, while Plaintiff spoke with Chief Wittmer about his decision not to discipline the female firefighter, there is no evidence that Towner or Farrell or Carter, who were responsible for his return to lieutenant rank, knew of Plaintiff's criticisms, and they deny such knowledge. Def. Ex. B ¶ 9; Ex. C ¶ 10, D ¶ 13. There is no evidence that OFD expressed opposition to the speech; nor was Plaintiff disciplined for his refusal to discipline the female firefighter by Wittmer or by any other supervisor at OFD. In addition, aside from timing, there is no evidence that Defendants' reasons for demoting Plaintiff were pretextual.[4]

Finally, even if the speech were not related to Plaintiff's job responsibilities, Defendants are not liable if they can demonstrate that they would have taken the same action anywhere, regardless of the protected speech. Mt. Healthy City Sch. Dist. and Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977). While the government must prove this by clear and convincing evidence, Plaintiff has provided no evidence that he was treated differently from anyone else who failed to comply with

---

[3]  The Court, of course, does not condone any such comments, which might have been, but were not, the subject of a sexual discrimination retaliation claim under Title VII. 42 U.S.C. § 2000e, et seq.

[4]  While Plaintiff noted the typographical error in the date of his reprimand and the fact that the reprimand was written "from scratch," it is unclear how these facts show pretext. As for the timing of his evaluation, the City's Civil Service Rules require a probationary period performance evaluation. Def. Ex. C ¶ 8. There is no evidence in the record to contradict the fact that Plaintiff violated procedure with regard to the vehicle accident report incident. And, as Defendants note, Plaintiff's claim that Farrell's recommendation is suspect because he identified Wittmer as an internal source for his recommendation to demote, but Wittmer said he did not speak with Farrell about Plaintiff, does not demonstrate pretext. Farrell relied on multiple internal sources, and Wittmer independently noted that he had to instruct Plaintiff and his crew to get into uniform prior to roll call on multiple occasions, and that he had problems completing CFIRs, and that Plaintiff was the worst of the officers he reviewed in this respect. Supp. Def. Ex. A(1) at 22-23, 40-43.

10

departmental policy regarding reporting of damaged equipment, failed to conduct one-on-one evaluations, and failed to complete fire incident reports. Plaintiff does not dispute that the Department made timely completion of backing accident reports a top priority while Plaintiff was captain. Def. Ex. C ¶¶ 3-6. Plaintiff did not point to any evidence to rebut Defendants' clear and convincing evidence that they would have made the same decision in the absence of speech. This failure provides an additional basis for granting summary judgment.

## C.     Due Process

The procedural component of the Due Process Clause is implicated when there is a deprivation of life, liberty or property without due process of law. See Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998) (procedural due process requires proof of a protectible liberty or property interest and denial of adequate procedural protections); see also Zinermon v. Burch, 494 U.S. 113, 125-26 (1990). Plaintiff must raise a triable issue of fact that he suffered a governmental deprivation of a federal right without due process of law.

To have a property interest in a government benefit, such as Plaintiff's captaincy, a person must have a legitimate claim of entitlement to the benefit. See Thornton v. City of St. Helens, 425, F.3d 1158, 1164 (9th Cir. 2005) (citations omitted) ("At one pole, a state operating license that can be revoked only 'for cause' creates a property interest. . . . At the opposite pole, a statute that grants the reviewing body unfettered discretion to approve or deny an application does not create a property right."). A plaintiff "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." Id.

Plaintiff does not dispute that while he was on probation, he lacked a protectible property right in the position of captain. Rather, he argues that his property interest in his captaincy became vested by the time that he was demoted. However, there are no facts in the record to create a triable issue of fact on this point. Plaintiff was appointed as a limited duration captain prior to being appointed as a probationary captain, and multiple individuals testified that time as an LDA captain does not count towards time as a probationary employee. See Wittmer Depo. at 20; Farrell Depo. at 14-15; Carter Depo. at 18; Towner Depo. at 105-06. Plaintiff points to the statement in the MOU that the "probationary period of a bargaining unit member filling a position from a promotional

examination shall be for a period of six months of active service performing the full duties of the promoted rank," but Plaintiff has not raised a triable issue of fact that his LDA service met these criteria.[5] Rather, the natural reading of this language would cover a regular promotion, not an LDA.

There is no dispute of fact, therefore, that Plaintiff was only appointed to a limited duration captainship in April 2003, and was subsequently appointed to a permanent captain position subject to six-month probation in July 2003. Plaintiff was a probationary captain when returned to lieutenant status. The decision to sustain the promotion while in a probationary period is one with a great deal of discretion, and Plaintiff does not argue otherwise. Nunez v. City of Los Angeles, 147 F.3d 867, 871-72 (9th Cir. 1998) (no property interest in promotion). To the extent Plaintiff invokes substantive rather than procedural due process, he dismissed his substantive due process claims nearly a year ago. See Docket No. 34 (Order Granting in Part and Denying in Part MTD).

**D.    Equal Protection**

The Supreme Court has recognized that under certain circumstances, a "class of one" may state a claim for equal protection. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing "class of one" may raise an Equal Protection claim). Where the application of regulations is so arbitrary that there is no rational reason for the disparate treatment, the Equal

---

[5]    At oral argument, Plaintiff relied on Farrell's testimony that a person must be qualified to serve as an LDA captain as proof that LDA service meets the criteria for the probationary period set forth in the MOU. However, Farrell actually stated that LDA appointments are made "because there's not a permanent slot. Someone could be off injured. Somebody could be off long term sick or could be temporary – a temporary position. It's not a permanent job." Farrell Depo. at 16:5-11. When asked if a person appointed to an LDA position has to otherwise be qualified to hold that position, he responded "yes." Id. at 16:14-15. But when Farrell noted that an individual needs to be on an eligibility list and have taken a standing promotional test to be qualified to hold the position of "captain – permanent captain within the department of Oakland," he was referring to a permanent, not an LDA, position. Id. at 16:18-17:6. While Carter testified that "there are natural vacancies, the person does all the examination process, comes on the list, and then the chief – chief of the department decides to promote, then they are promoted," (Carter Depo. at 16) the normal meaning of a job vacancy is not a *temporary* absence of the incumbent. Moreover, when pressed about whether an LDA appointment time counts towards time as a probationary captain, he answered that he was not sure. Id. at 17. Then, when the question was clarified, and he was specifically asked if a man "is promoted from lieutenant to captain on an LDA basis" whether the "time he serves as an LDA captain count towards his time as probationary captain for those six months," he answered "no." He stated "It's my understanding the rules that apply dictate that when you are promoted to a captain, a full capacity captain, no longer have the LDA, that's when your probationary period starts." Id. at 18. His testimony, therefore, indicates that the LDA captain position is not full capacity in some way, and does not count towards probation time.

Protection Clause may be violated.  Where as here, Plaintiff does not claim membership in a protected class, he must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).  However, "the class-of-one theory of equal protection is inapplicable to decisions made by public employers with regard to their employees."  Engquist v. Or. Dep't of Agric., 478 F.3d 985, 996 (9th Cir. 2007).  Because Plaintiff is a public employee, his claim fails.  Plaintiff's counsel conceded this point at oral argument.  Even if he were not a public employee, Plaintiff has not shown differential treatment.  Regarding other officers who were promoted after engaging in egregious conduct, there is no evidence that such officers were similarly situated to Plaintiff and were on probation when the purported misconduct occurred.  Def. Ex. A(1) at 197-203 (plaintiff admits he lacks personal knowledge regarding other individuals' disparate treatment); Ex. D ¶ 14 (Carter was not aware that any individuals mentioned in second amended complaint were on probation).  Summary judgment is proper as to this claim.

### E.        Municipal Liability

A municipal government can be held liable under Section 1983 only if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality.  See Monell v. Department of Social Serv., 436 U.S. 658 (1978).  A municipality may be held liable for an official policy or informal custom, Monell, 690-94 (1978), for acts or decisions of officials with final policy-making authority, Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989), or for ratifying the act of another, Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir.1992).  A plaintiff may also demonstrate that an existing custom, practice or usage within a municipality is so persistent and widespread as to be deemed official policy.  Monell, 436 U.S. at 690.  See also Ninth Circuit Model Jury Instructions §§ 9.4-9.6.

Because Plaintiff has not raised a triable issue of fact as to the violation of his rights, the municipality is not liable.  However, even if there were an underlying constitutional violation, the municipality would not be liable under the First Amendment.  Plaintiff argues that the final policymaking authority, Chief Simon, acted upon Dan Farrell's recommendation to "demote"

Plaintiff and is therefore liable to Williams.[6]  Chief Simon, however, merely ratified the decision of a subordinate.  A policymaker's deferential review of a subordinate's discretionary decision is not the basis for Section 1983 liability, unless a subordinate's decision is cast in the form of a policy statement and expressly approved by a policymaker or if a series of decisions by a subordinate official show a custom of which a supervisor must have been aware.  Gillette v. Delmore, 979 F.2d 1342, 1348 (9th Cir. 1992); see also St. Louis v. Praprotnik, 485 U.S. 112 (1988) ("When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.").  Here, there is no evidence that Chief Simon was aware of any speech by the Plaintiff, so there is no evidence that he ratified a decision to "demote" Plaintiff based on his exercise of speech.  Id. (plaintiff must show that "policymaker approve a subordinate's decision *and the basis for it*" for liability to attach to municipality) (emphasis in original).

///

///

///

///

///

///

---

[6]    As Defendants point out, Defendant Carter  was simply implementing the directive of his supervisor.  Even if Plaintiff had demonstrated any material factual disputes as to his Constitutional claims, it is doubtful that he would prevail in arguing that Defendant Carter was obligated to intervene to prevent any constitutional deprivation.  As Defendants note, the duty to intervene cases relied upon by Plaintiff arise in the excessive force context.  See, e.g., Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (noting that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence" and that "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, . . . (2) that a citizen has been unjustifiably arrested, . . or (3) that any constitutional violation has been committed by a law enforcement official" but that "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.").  In any event, Plaintiff does not point to any evidence that Carter had a realistic opportunity to intervene.

### III. CONCLUSION

In accordance with the foregoing, the court GRANTS Defendant's motion. Summary judgment is GRANTED as to all claims. This order terminates the above-captioned case and any pending motions. The clerk shall close the case file.

Dated: January 30, 2008

_Elizabeth D. Laporte_
_____
ELIZABETH D. LAPORTE
United States Magistrate Judge